**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION**

**JOSEPH GREGORY LASTER,**
         **Plaintiff,**

**vs.**                                   **Case No: 5:05cv222/SPM/MD**

**ASSISTANT WARDEN VARNES, et al.,**
         **Defendants.**

---

## REPORT AND RECOMMENDATION

        This cause is before the court upon plaintiff's second amended civil rights complaint ("complaint") filed pursuant to 42 U.S.C. §1983. (Doc. 60). On August 24, 2006 the District Judge entered an order dismissing plaintiff's claims against defendants Hollford, Whitfield, Mitchell, Moore, White, Mayo, Varnes and Payne. The matter was remanded to the undersigned for further proceedings on plaintiff's Eighth Amendment claims against defendants Ivey, Hall, Hughes, and Ciungu. (Doc. 89). Defendants Ivey, Hall and Ciungu have now filed a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) on the grounds that the complaint and attachments establish that relief is barred by plaintiff's failure to properly exhaust his administrative remedies. (Doc. 124). Plaintiff has responded in opposition to the motion. (Docs. 134, 138). Upon review, the court concludes that the motion should be granted.

## BACKGROUND

        Plaintiff, an inmate of the Florida penal system, is currently confined at Washington Correctional Institution ("Washington CI").   His claims against

defendants Nurse Ivey, Nurse Hall and Doctor Ciungu ("the moving defendants") arise from an injury plaintiff sustained to his left hand during a fight on September 2, 2004.  Regarding defendants Nurse Hall and Nurse Ivey, plaintiff alleges that after he complained of "extreme, throbbing pain" during his pre-confinement examination, these defendants informed an officer "that [plaintiff] only had a fracture," and denied his request to see a doctor.  (Doc. 60, p. 9).[1]  Plaintiff further alleges that when he complained to Nurse Hall of "severe, chronic pain" during a pre-confinement examination after he was involved in another fight on September 6, 2004, she denied him medical treatment and denied his request to see a doctor. (*Id.*, p. 11).  Regarding Doctor Ciungu, plaintiff alleges that he failed to accommodate plaintiff's hand injury when he approved plaintiff's work assignment to an outside farm squad.  He also complains that Doctor Ciungu "lied" by telling plaintiff that he would send him to the Reception and Medical Center for consultation with a bone specialist, but instead scheduled plaintiff for consultation with a plastic surgeon. (*Id.*, pp. 15-16).  Claiming that the foregoing conduct amounted to cruel and unusual punishment in violation of the Eighth Amendment, plaintiff seeks monetary damages.

## DISCUSSION

### Standard for Motion to Dismiss

In considering a motion to dismiss for failure to state a claim under Rule 12(b)(6), the court must take all well-pleaded facts of the complaint as true and construe them in the light most favorable to the plaintiff.  *Davis v. Monroe County Bd. of Educ.*, 120 F.3d 1390, 1393 (11th Cir. 1997).  The complaint may be dismissed only where it appears beyond a doubt that the plaintiff can prove no set of facts that would entitle him to relief.  *See Leal v. Georgia Dep't of Corrections.*, 254 F.3d 1276, 1280 (11th Cir. 2001); *Brown v. Budget Rent-A-Car Systems, Inc.*, 119 F.3d 922, 923 (11th Cir. 1997).  For example, if the allegations show that relief is barred by an

---

[1]Plaintiff's second amended complaint is referenced by the handwritten page numbers appearing in the upper right-hand corner of each page.

affirmative defense, the complaint is subject to dismissal for failure to state a claim. *See Jones v. Bock*, --- U.S. ---, 127 S.Ct. 910, 920, 166 L.Ed.2d 798 (Jan. 22, 2007).

<u>Consideration of Attachments to Complaint</u>

On a motion to dismiss, the court may consider documents attached to the complaint or directly referenced in the complaint. *See Grossman v. Nationsbank, N.A.*, 225 F.3d 1228, 1231 (11th Cir. 2000); *Brooks v. Blue Cross & Blue Shield*, 116 F.3d 1364, 1368-69 (11th Cir. 1997); *Solis-Ramirez v. United States Dep't of Justice*, 758 F.2d 1426, 1430 (11th Cir. 1985) ("[A]ttachments [to the complaint] are considered part of the pleadings for all purposes, including a Rule 12(b)(6) motion."); FED.R.CIV.P. 10(c) ("A copy of any written instrument which is an exhibit to a pleading is a part thereof for all purposes.").  Further, "where there is a conflict between allegations in a pleading and exhibits thereto, the exhibits control." *Wydler v. Bank of America, N.A.*, 360 F.Supp.2d 1302, 1306 n. 1 (S.D. Fla. 2005) (citations omitted); *Wilbesan Charter Sch., Inc. v. School Bd. of Hillsborough County*, 447 F.Supp.2d 1292, 1302 (M.D. Fla. 2006).

<u>Exhaustion of Administrative Remedies</u>

Title 42 U.S.C. § 1997e provides in relevant part:  "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a  prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a).[2]  Exhaustion of all available administrative remedies is mandatory, and is

---

[2]The purpose of this exhaustion requirement is to reduce the quantity and improve the quality of prisoner suits.  *Porter v. Nussle*, 534 U.S. 516, 524, 122 S.Ct. 983, 152 L.Ed.2d 12 (2002).  In *Alexander v. Hawk*, 159 F.3d 1321 (11th Cir. 1998), the Eleventh Circuit noted the following seven policy reasons favoring exhaustion:

(1)      to avoid premature interruption of the administrative process;
(2)      to let the agency develop the necessary factual background upon which decisions should be based;
(3)      to permit the agency to exercise its discretion or apply its expertise;
(4)      to improve the efficiency of the administrative process;
(5)      to conserve scarce judicial resources;
(6)      to give the agency a chance to discover and correct its own errors; and
(7)      to avoid the possibility that "frequent and deliberate flouting of the administrative processes could weaken the effectiveness of an agency by encouraging people to ignore its procedures."

a pre-condition to suit. *Booth v. Churner*, 532 U.S. 731, 739, 121 S.Ct. 1819, 149 L.Ed.2d 958 (2001); *see also Porter v. Nussle*, 534 U.S. 516, 524-25, 122 S.Ct. 983, 988, 152 L.Ed.2d 12 (2002) ("Beyond doubt, Congress enacted § 1997e(a) to reduce the quantity and improve the quality of prisoner suits; to this purpose, Congress afforded corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case.").  The exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong. *Porter v. Nussle*, 534 U.S. at 524, 122 S.Ct. 983. Exhaustion is required whether the plaintiff seeks declaratory and injunctive relief, monetary damages, or both. *Booth, supra* at 734, 121 S.Ct. at 1825. The requirement is not subject to either waiver by a court or futility or inadequacy exceptions. *See Booth, supra* at 741 n. 6; *McCarthy v. Madigan*, 503 U.S. 140, 112 S.Ct. 1081, 117 L.Ed.2d 291 (1992) ("Where Congress specifically mandates, exhaustion is required."); *Alexander v. Hawk*, 159 F.3d 1321 (11th Cir. 1998).  Moreover, as the United States Supreme Court recently held, the PLRA requires "proper exhaustion," so that the agency addresses the issues on the merits. *Woodford v. Ngo*, --- U.S. ---, 126 S.Ct. 2378, 2387-88, 165 L.Ed.2d 368 (2006); *see also* 126 S.Ct. at 2388 ("The benefits of exhaustion can be realized only if the prison grievance system is given a fair opportunity to consider the grievance.  The prison grievance system will not have such an opportunity unless the grievant complies with the system's critical procedural rules.").  The exhaustion requirement is not satisfied by the prisoner filing an untimely or otherwise procedurally defective administrative grievance or appeal. *Id.*, 126 S.Ct. at 2378.

<u>Analysis</u>

Plaintiff alleges in his complaint that he exhausted his administrative remedies by filing an informal grievance, a formal grievance, and an appeal to the Office of the

---

*Id.* at 1327 (quoting *Kobleur v. Group Hospitalization and Med. Servs., Inc.*, 954 F.2d 705, 712 (11th Cir. 1992)).

Secretary.  (Doc. 60, p. 5).  He attached to the complaint six administrative appeal grievances pertaining to the medical care provided for his hand injury:

> (1) Grievance appeal dated October 29, 2004, (doc. 60, pp. 23-25),
>
> (2) Grievance appeal dated April 12, 2005, (*id.*, pp. 31-33),
>
> (3) Grievance appeal dated May 24, 2005, (*id.*, pp. 34-36),
>
> (4) Grievance appeal dated May 24, 2005, (*id.*, pp. 37-39),
>
> (5) Grievance appeal dated October 24, 2005, (*id.*, pp. 40-45), and
>
> (6) Grievance appeal dated October 24, 2005, (*id.*, pp. 49-51).

According to the moving defendants, these grievances demonstrate that plaintiff failed to properly exhaust his administrative remedies prior to filing suit because the grievances either: (1) were returned without processing as not in compliance with grievance rules, (2) were still pending at the time plaintiff initiated this action, or (3) failed to alert prison officials to the claims raised in this lawsuit. The undersigned agrees.

Generally, the Florida Department of Corrections ("FDOC") provides a three-level administrative grievance procedure for prisoner complaints.  This procedure includes an informal grievance, a formal grievance and an appeal to the Office of the Secretary.  *See* FLA. ADMIN. CODE rr. 33-103.005 to 103.007 (2003).  For medical grievances, however, informal grievances are not required.  FLA. ADMIN. CODE r. 33-103.005(1); *see also* FLA. ADMIN. CODE r. 33-103.006(3)(e) and 33-103.006(2)(h).

A grievance may be returned to the inmate without further processing if a condition enumerated in Rule 33.103.014 is found to exist.  FLA. ADMIN. CODE r. 33-103.014(1).  Of significance here, one of the reasons for returning a grievance without a response on the merits is that the inmate bypassed the previous level of review as required, and either failed to provide a valid reason for bypassing the previous level of review or provided a reason that was not acceptable.  FLA. ADMIN. CODE r. 33-103.014(1)(f).  Anther reason a grievance may be returned is that it does not have the required attachments (e.g., an appeal grievance must contain a copy of the formal grievance and response).  FLA. ADMIN. CODE r. 33-103.014(1)(g).

The attachments to the complaint establish that plaintiff's administrative appeals dated October 29, 2004 and April 12, 2005 were returned to plaintiff without

processing because he failed to first submit a formal grievance (or failed to attach a copy of it) and failed to provide a valid reason for bypassing the formal grievance level. (Doc. 60, pp. 23-25 and 31-33). Under *Woodford*, these procedurally defective grievances do not satisfy the exhaustion requirement.

Both of plaintiff's October 24, 2005 administrative appeals were submitted after plaintiff initiated this lawsuit on October 22, 2005.[3] (Doc. 1, p. 8; doc. 60, pp. 43-45 and 49-51). Thus, they cannot serve to satisfy the exhaustion requirement.

Thus, of the six grievances plaintiff submitted on his medical claims, only two could serve to satisfy the exhaustion requirement: plaintiff's two belated appeal grievances dated May 24, 2005. (Doc. 60, pp. 34-36 and 37-39). The moving defendants contend that these grievances are insufficient because they fail to alert prison officials to the claims raised in this lawsuit. (Doc. 124, p. 6). In response, plaintiff argues that the fact that he did not name Nurse Hall and Nurse Ivey in his grievances does not mean that the grievance process was not invoked, or was improperly invoked, as to these defendants. (Doc. 138).

In *Jones v. Bock, supra*, the United States Supreme Court held that "exhaustion is not *per se* inadequate simply because an individual later sued was not named in the grievances." --- U.S. ---, 127 S.Ct. at 923. The Court reiterated that one of the purposes of the exhaustion requirement is to "allow a prison to address complaints about the program it administers before being subjected to suit." *Id.* "The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements . . . that define the boundaries of proper exhaustion." *Id.*

_____

[3]Plaintiff's complaint states that it was delivered to prison officials for mailing, or deposited in the prison's internal mail system, on October 22, 2005. (Doc. 1). According to the "mailbox rule," a *pro se* prisoner's civil rights complaint is considered to be filed on the date the prisoner delivers it to prison authorities for mailing. *Houston v. Lack*, 487 U.S. 266, 275, 108 S.Ct. 2379, 101 L.Ed.2d 245 (1988); *Garvey v. Vaughn*, 993 F.2d 776, 783 (11th Cir. 1993) (holding that the "mailbox rule" governs the filing date for a complaint by a *pro se* prisoner under § 1983 or the Federal Tort Claims Act). Even assuming *arguendo* that the complaint was filed on October 28, 2005, the date it was stamped "Filed" by the Clerk of Court, the October 24, 2005 grievance appeals fail to satisfy the exhaustion requirement because plaintiff failed to allow prison officials sufficient time in which to address them. *See* FLA. ADMIN. CODE r. 33-103.011(3)(c) (providing prison officials thirty days in which to respond to a grievance appeal).

At the time the grievances at issue were filed, the FDOC's rules did not contain a provision specifying who must be named in a grievance. The rules required only that prisoners ensure that the form is legible, that included facts are accurately stated, and that only one issue or complaint is addressed. FLA. ADMIN. CODE r. 33-103.006(2)(e)-(g) (stating requirements of formal grievances); FLA. ADMIN. CODE r. 33-103.007(2)(e)-(g) (stating requirements of appeals to the Office of the Secretary). Neither the FDOC's rules nor the FDOC's grievance forms require prisoners to identify a particular responsible party, and the respondent is not necessarily the allegedly culpable prison official. The respondent is an administrative official designated in the rules to respond to particular types of grievances at different levels. FLA. ADMIN. CODE rr. 33-103.006 and 33-103.007.

Applying the foregoing to plaintiff's May 24, 2005 appeal grievances, the undersigned concludes that they are insufficient to exhaust plaintiff's claims against Nurse Ivey, Nurse Hall and Doctor Ciungu. In the first May 24, 2005 belated grievance appeal, plaintiff states that he is appealing the denial of his April 11, 2005 formal grievance number 0503-110-140. (Doc. 60, p. 34). In plaintiff's formal grievance number 0503-110-140, he explained that it had been six months since his hand injury; that he had been in pain for months; and that he had been told by "the doctors" that his hand was fractured. He asserted that his knuckle was "knocked back beyond the little and middle knuckle," and disagreed with Doctor Hughes' statement that no specialist could put the knuckle back into place. Plaintiff further reported that he was experiencing pain when trying to get out of his bunk. Plaintiff sought assistance "in seeing a bone specialist." (*Id.*, p. 27). The grievance was denied. (*Id.*, p. 28). Plaintiff appealed, asserting that in the eight months since his hand injury he had been provided "almost no" medical treatment even though his hand had been x-rayed four times and diagnosed as fractured; that Doctor Hughes denied plaintiff's request for referral to a bone specialist; and that plaintiff was experiencing sharp pain in his hand as a result of being required to place his locker on his bunk. (*Id.*, pp. 34-35). The grievance appeal was denied by the Office of the Secretary on July 8, 2005. (*Id.*, p. 36).

Clearly, the foregoing grievance appeal is insufficient to exhaust plaintiff's work assignment and plastic surgeon claims against Doctor Ciungu, as it makes no mention of these issues. Further, although the grievance alerts prison officials to plaintiff's complaints about the course of treatment provided by the doctor and medical staff after plaintiff's hand had been x-rayed and diagnosed as fractured, it does not alert officials to a problem with nursing staff's provision of medical care during plaintiff's pre-confinement examinations immediately following the injury (i.e., their failure to provide treatment and their denial of plaintiff's request to see a doctor).[4]

In plaintiff's second May 24, 2005 belated grievance appeal, plaintiff states that he is appealing the November 12, 2004 denial of formal grievance number 0410-110-057. (*Id.*, p. 38). Plaintiff's formal grievance number 0410-110-057 asserted that for twenty days after plaintiff injured his hand, he was given no medical attention even though he informed the nurse that he was in pain. Plaintiff further complained that his hand was not x-rayed until 41 days after the injury. He asserted that the x-ray revealed that his hand was fractured or broken, and that he was filing a grievance "in case my hand would have to be re-broken and reset." (*Id.*, p. 21). This grievance was denied. (*Id.*, p. 22). Plaintiff appealed. After explaining what had occurred at the formal grievance level, plaintiff indicated that he was appealing the issue of "not receiving adequate medical treatment following x-ray by way of seeing a bone specialist and any other remedy for the seriousness of the injury and pain." (*Id.*, p. 38). As relief, he sought "the granting of the belated grievance appeal and seeing a bone specialist." (*Id.*). The grievance appeal was denied on July 27, 2005. (*Id.*, p. 39).

Again, this grievance appeal is insufficient to exhaust plaintiff's work assignment and plastic surgeon claims against Doctor Ciungu, as it makes no

---

[4]It is noted that on April 5, 2005 plaintiff filed another formal grievance in which he presented facts identical to those in formal grievance number 0503-110-140. The formal grievance was assigned number 0504-110-043. (Doc. 60, p. 29). The grievance was approved on April 21, 2005 "for a follow up visit." (*Id.*, p. 30). Plaintiff was not required to exhaust the issue further. However, for the reasons just stated, this grievance does not satisfy the exhaustion requirement because it does not alert prison officials to the problems on which plaintiff's claims against Doctor Ciungu, Nurse Hall and Nurse Ivey are based.

mention of these issues.  Furthermore, although plaintiff's formal grievance alerted the responding official to the issue of allegedly inadequate medical care provided at the pre-confinement stage, plaintiff did not pursue that issue in his appeal to the Office of the Secretary.  Rather, he alerted the Secretary only to the issue of the allegedly inadequate medical treatment provided after the x-ray (i.e., medical staff's failure to refer plaintiff to a bone specialist and failure to provide other relief for his injury and pain).  Thus, plaintiff's claims against Nurse Ivey, Nurse Hall and Doctor Ciungu are not exhausted from this effort.

## CONCLUSION

Based on the foregoing, the undersigned concludes that taking the allegations of the second amended complaint and attachments as true and construing them in the light most favorable to plaintiff, they establish that plaintiff failed to properly exhaust his administrative remedies with respect to his claims against defendants Nurse Ivey, Nurse Hall and Dr. Ciungu.  Thus, dismissal of these claims is warranted. *Compare Soler v. Bureau of Prisons*, No. 3:03cv488/RV/MD, 2007 WL 496472 (N.D. Fla. Feb. 12, 2007) (concluding that *Jones v. Bock, supra*, did not provide a sufficient basis to reconsider the dismissal of a prisoner complaint for failure to state a claim based on the prisoner's failure to exhaust administrative remedies, where "the allegations in the complaint, coupled with the numerous and various exhibits attached thereto, presented an adequate factual record and made clear that those claims had not been exhausted."), *with Scarborough v. Cohen*, No. 4:06cv152/RH/WCS, 2007 WL 934594 (N.D. Fla. Mar. 26, 2007) (converting Rule 12(b)(6) motion to dismiss for failure to state a claim (based on prisoner's failure to exhaust administrative remedies) to one for summary judgment, where "[t]he affirmative defense in this case does not clearly appear on the face of the complaint or in the attachments to the complaint, and the attachments to Defendant's motion to dismiss must be considered.").

According, it is respectfully RECOMMENDED:

1.  That defendants Ivey, Hall and Ciungu's motion to dismiss (doc. 124) be GRANTED.

    **2.   That plaintiff's claims against defendants Ivey, Hall and Ciungu be DISMISSED WITHOUT PREJUDICE pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) for plaintiff's failure to state a claim upon which relief may be granted.**

    **3.   That this matter be remanded to the undersigned for further proceedings on plaintiff's Eighth Amendment claims against defendant Doctor Hughes.**

    **At Pensacola, Florida this 1st day of May, 2007.**

/s/ *Miles Davis*

**MILES DAVIS
UNITED STATES MAGISTRATE JUDGE**

<u>**NOTICE TO THE PARTIES**</u>

**Any objections to these proposed findings and recommendations must be filed within ten days after being served a copy hereof.  <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control</u>.  A copy of any objections shall be served upon any other parties.  Failure to object may limit the scope of appellate review of factual findings.  *See* 28 U.S.C. § 636; *United States v. Roberts*, 858 F.2d 698, 701 (11th Cir. 1988).**